**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250070-U

Order filed August 7, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| VILLAGE OF BOLINGBROOK | ) | Petition for Review of Orders of the |
| | ) | Illinois Commerce Commission. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ICC Docket No. 24-0097 |
| | ) | Appeal No. 3-25-0070 |
| ILLINOIS COMMERCE COMMISSION, | ) | |
| ILLINOIS-AMERICAN WATER COMPANY, | ) | |
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| ILLINOIS INDUSTRIAL WATER | ) | |
| CONSUMERS, CITIZENS UTILITY BOARD, | ) | |
| VILLAGE OF HOMER GLEN, LEGAL | ) | |
| ACTION CHICAGO, CITY OF CHAMPAIGN, | ) | |
| CITY OF SOUTH BELOIT, CITY OF | ) | |
| URBANA, VILLAGE OF PHILO, VILLAGE | ) | |
| OF SAINT JOSEPH, VILLAGE OF SAVOY | ) | |
| and VILLAGE OF SIDNEY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: Municipality did not establish grounds to reverse Illinois Commerce Commission's decision to approve a modified rate increase for water and sewer service. Affirmed.

¶ 2        Petitioner, Village of Bolingbrook, appeals from a decision of the Illinois Commerce Commission (Commission) approving a modified rate increase for customers of the Illinois-American Water Company (Company). The Village argues the Commission's decision is not supported by substantial evidence, and that any rate increase violates the Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq.* (West 2024)) and the Illinois and federal constitutions. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In January 2024, the Company filed proposed tariffs with the Commission, requesting a general rate increase for water and sewer service pursuant to section 9-201 of the Act (220 ILCS 5/9-201 (West 2024)). After the Company published notice of its filing of the proposed tariffs, appearances or petitions to intervene were filed by the Commission Staff (Staff), Attorney General, Illinois Industrial Water Consumers, Citizens Utility Board, Legal Action Chicago, the Village, and other municipalities. The Commission granted the petitions to intervene.

¶ 5        In June and July 2024, public forums were held in Jerseyville, Bolingbrook, and Champaign. During the public forum held in Bolingbrook, the Company's president announced the proposed rates would increase customers' monthly billing statements by a dollar per day. Bolingbrook customers voiced their opposition to the proposed rates, explaining how the Company's current rates negatively affected their daily lives.

¶ 6        In August 2024, the Commission conducted an evidentiary hearing at which the parties waived cross-examination and the administrative law judge granted all the motions to admit. Together, the Company and the intervening parties submitted nearly 5,000 pages of exhibits, including responses to data requests and testimonies of approximately 30 witnesses, with supporting affidavits. The Village submitted 136 water billing statements issued by the Company

to Bolingbrook residents between January and August 2024. The bills ranged from $91.49 to $728.60 per month, with a monthly average exceeding $150.

¶ 7        In November 2024, the Commission heard argument from the Staff, the Company, the Attorney General, Legal Action Chicago, and some municipalities, including the Village.

¶ 8        In December 2024, the Commission approved a rate increase narrower than that proposed by the Company. The Commission's order spanned 250 pages and contained findings on various contested issues, including rate base, operating revenues and expenses, capital structure and rate of return, service cost, rate design, and low-income tariff. As part of its consideration of rate design, the Commission detailed the Village's position on customer bill impacts. Its order stated, "The Commission notes and takes into account [the Village's] input as well as all of the customers who commented about the proposed rate increase. While the Commission can consider these comments, it is noted that they cannot be relied on to make a determination of facts." Over the Staff's objection, the Commission approved an expansion to the Company's existing low-income discount program. The Commission supported its findings with calculations appended to the order.

¶ 9        In January 2025, the Village applied for rehearing pursuant to section 10-113(a) of the Act. The Village stated its application "focuses solely on the Commission's conclusion regarding the detrimental customer billing impacts" resulting from the rate increase. It argued the conclusion "sets poor public policy," where the Commission failed to justify its apparent disregard for the public's "dismay" in response to the proposed rate increase.

¶ 10        The Commission denied the Village's application for rehearing, and the Village appealed.

¶ 11                                    II. ANALYSIS

¶ 12                                    A. Motions to Strike

3

¶ 13    The Commission and the Company have separately filed motions, which we have taken with the case, to strike portions of the Village's brief on appeal. In their motions, the Commission and the Company argue the Village's brief raises arguments not properly preserved for appeal. The Commission moves to strike sections I(B) and I(C) from the Village's opening brief. The Company moves to strike, *inter alia*, section I(B)'s constitutional basis, section I(C), and section II.

¶ 14    The Act prohibits an appealing party from urging or relying on grounds not set forth in an application for rehearing before the Commission. 220 ILCS 5/10-113(a) (West 2024). This rule demands strict compliance; an issue is forfeited if the application for rehearing raises it only implicitly or in general terms. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2015 IL 116005, ¶ 45. Although a court generally has discretion to excuse forfeiture, judicial review of a Commission decision is an exercise of "special statutory jurisdiction." *Id.* ¶ 46. Such jurisdiction affords no discretion to review a ground not preserved as the Act requires. *Id.* (vacating appellate court's holding on an issue not raised in an application for rehearing).

¶ 15    In section I(B) of its brief, the Village argues the approved rate increase violates the Illinois and federal constitutions. Specifically, the Village argues the rate increase contradicts the State's requirement to provide for the public welfare and assure "economic justice" (Ill. Const. 1970, Preamble) and denies Bolingbrook residents "equal protection of the laws" (U.S. Const. amend. XIV, § 1; Ill. Const. 1970, art. I, Sec. 2) where other communities do not face the same "unmanageable rates."

¶ 16    On review of the Village's application for rehearing, we do not find a corresponding argument that the rate increase violates the Illinois and federal constitutions. The application included a single mention of the constitution (the Illinois constitution) in a context that served only to frame the Village's contention that the Commission had failed to address residents' concerns.

The application for rehearing noted the Commission's decision discussed "the Commission's duties *** to ensure *** the public health, safety and welfare are protected in accordance with the Illinois Constitution of 1970 and established public policy ***." (Emphasis omitted.) After listing other matters discussed in the decision, the application turned to its central contention: "However, the legitimate concerns of Bolingbrook residents corroborated by the record are absent from the Commission's decision." The application's mention of the constitution, therefore, was nothing more than a passing reference and was insufficient to preserve a constitutional argument for appeal. See *Kreutzer v. Illinois Commerce Comm'n*, 2012 IL App (2d) 110619, ¶ 42 (2010) (mentioning an issue in an application for rehearing but failing to assign error does not preserve it for appellate review but results in forfeiture of the issue). Because section I(B)'s argument rests on a forfeited constitutional basis, we strike it in its entirety.

¶ 17    In section I(C), the Village attempts to buttress its policy argument by pointing to other jurisdictions that have recognized access to affordable water as a fundamental human right. We see no corresponding appeal to foreign authority in the application for rehearing and thus strike section I(C) as forfeited.

¶ 18    In section II, the Village maintains the Commission's findings are unsupported by substantial evidence based on the entire evidentiary record before the Commission. See 220 ILCS 5/10-201(e)(iv)(A) (West 2024) (setting forth the first basis for reversal under the Act). In its motion to strike, the Company notes the application for rehearing did not use the term "substantial evidence" even once. It further notes that while section 10-201(e)(iv)(A) of the Act focuses on the totality of the evidence (see *id.*), the application for rehearing was focused only on a small portion of the record. While we do not disagree with the Company's observations, we find section II

remains substantively within the bounds of the Village's application for rehearing. Accordingly, we deny the Company's motion to strike section II of the Village's opening brief.

¶ 19                    B. The Village's Remaining Arguments

¶ 20         The Act governs and limits our review of Commission decisions. *Apple Canyon Lake Property Owners' Ass'n v. Illinois Commerce Comm'n*, 2013 IL App (3d) 100832, ¶ 19. We may not disturb a Commission decision unless we find (1) the Commission's findings unsupported by substantial evidence based on the entire evidentiary record before the Commission; (2) the Commission lacked jurisdiction to enter the decision; (3) the decision violates "the State or federal constitution or laws"; or (4) the Commission reached its decision by a manner or proceedings that violated the state or federal constitution or laws, to the appellant's prejudice. 220 ILCS 5/10-201(e)(iv)(A)-(D) (West 2024). The Village argues the Commission's decision is not supported by substantial evidence (*id.* § 10-201(e)(iv)(A)) and violates the Act (*id.* §§ 10-201(e)(iv)(C), (D)).

¶ 21         "It is well settled that a decision of the Commission is entitled to great deference because it is the judgment of a tribunal appointed by law and informed by experience." (Internal quotation marks omitted.) *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 12 (1994); accord *Madigan*, 2015 IL 116005, ¶ 23 ("Deference to the Commission is especially appropriate in the area of fixing rates." (Internal quotation marks omitted.)). The Commission's "findings of fact are to be considered *prima facie* true; its orders are considered *prima facie* reasonable; and the burden of proof on all issues raised in an appeal is on the appellant." *United Cities Gas Co.*, 163 Ill. 2d at 11. "Apart from examining whether the Commission acted within the scope of its authority or infringed upon a constitutional right, a court is limited to reviewing whether the Commission set out findings of fact supporting its decision and whether the findings are against

6

the manifest weight of the evidence." *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 117 Ill. 2d 120, 142 (1987).

¶ 22    We now turn to the arguments set forth in sections I(A) and II of the Village's brief.

¶ 23                    1. *Section I(A) of the Village's argument*

¶ 24    In section I(A) of its argument, the Village invokes the third and fourth bases for reversal under the Act (220 ILCS 5/10-201(e)(iv)(C), (D) (West 2024)), arguing the decision violates the Act, which prohibits "[e]very unjust or unreasonable charge" to the public (*id.* § 9-101) and whose preamble sets forth a public policy for "affordable" utility rates (*id.* § 1-102). Specifically, the Village argues any rate increase is unjust and unreasonable—where Bolingbrook's public comments revealed many Bolingbrook residents could not afford the current rates and where a sampling of residential billing statements corroborated that "public outcry."

¶ 25    Section 8-306(n) of the Act provides that public forum comments "must be made available to the hearing officials and reviewed when drafting a recommended or tentative decision, finding or order ***." 220 ILCS 5/8-306(n) (West 2024). In its decision, the Commission specifically noted the public's response to the proposed rate increase:

> "The public forum in Bolingbrook was attended by well over 300 people and numerous elected officials. The majority of the attendees were against the rate increase sought by [the Company]. Bolingbrook residents loudly voiced their concerns about how the proposed rate increase will exacerbate the financial hardships placed upon them by the current, unaffordable water rate. *** In addition to the concerns voiced at the Bolingbrook public forum, [the Village] notes the hundreds of public comments posted to the Commission website that echo the sentiments expressed at the public forum."

7

The decision continued, "The Commission notes and takes into account [the Village's] input as well as all of the customers who commented about the proposed rate increase. While the Commission can consider these comments, it is noted that they cannot be relied on to make a determination of facts."

¶ 26        The Village concedes that while public comments are relevant to the Commission's decisionmaking process, they "may not be treated as evidence or relied upon to resolve contested issues of fact." *Apple Canyon*, 2013 IL App (3d) 100832, ¶ 42. Nevertheless, it argues the Commission did not fulfill its statutory duty to review the public comments (220 ILCS 5/8-306(n) (West 2024)) and, therefore, it failed to genuinely "consider certain equitable and policy considerations" (*Apple Canyon*, 2013 IL App (3d) 100832, ¶ 41) to determine whether the proposed rate increase was just and reasonable under the Act (220 ILCS 5/9-201(c) (West 2024)). See *Apple Canyon*, 2013 IL App (3d) 100832, ¶ 43 (public comments are relevant to whether the public understands and accepts the proposed rate increases and whether those increases are just and reasonable). According to the Village, the public comments (along with the 136 billing statements) demonstrate that *any* rate increase is unjust and unreasonable.

¶ 27        The Village's argument seems to rest on the premise that the Commission could not have genuinely considered public comments because it nonetheless approved a rate increase. We disagree with that premise. The Act does not make public acceptance (or even affordability) dispositive of whether a proposed rate is just and reasonable. Rather, it sets out a broader framework that recognizes a utility's right to "the total costs prudently and reasonably incurred" (220 ILCS 5/1-102(a)(iv) (West 2024)) and to "a sufficient return on investment so as to enable [the utility] to attract capital in financial markets at competitive rates" (*id.* § 1-102(a)(iii)). *Madigan*, 2015 IL 116005, ¶ 7. Indeed, as our supreme court has explained, the Commission must

8

first determine the utility's revenue requirement, defined as the sum of its recoverable operating costs and an authorized return on its invested capital. *Id.* (citing *Citizens Utilities Co. of Illinois v. Illinois Commerce Comm'n*, 124 Ill. 2d 195, 200-01 (1988)). The Commission was therefore required to consider the public's affordability concerns alongside the evidence bearing on the Company's costs, capital needs, and entitlement to a reasonable return.

¶ 28    We likewise disagree that the Commission failed to fulfill its statutory duty to consider the public comments. Section 8-306(n) requires public comments to be "made available to the hearing officials and reviewed" during the decisionmaking process. 220 ILCS 5/8-306(n) (West 2024). It does not dictate how much weight the Commission must give to the comments. See *Apple Canyon*, 2013 IL App (3d) 100832, ¶ 44 (the Commission is free to accord the public comments whatever weight it deems appropriate). Nor does it require the Commission to enter comment-specific findings (see *Hartigan*, 148 Ill. 2d at 366 (the Commission need not make findings "regarding every step")), let alone to adopt the public's desired outcome. Accordingly, we are not persuaded that the Commission disregarded public input simply by not giving it dispositive weight.

¶ 29    The only evidence the Village cites to establish the unjustness and unreasonableness of the rate increase is an exhibit containing 136 residential water bills averaging more than $150 per month. The Village's reliance on these bills suggests affordability is the sole measure of a rate's justness and reasonableness. It is not. Affordability is but one of several considerations informing that determination. See *supra* ¶ 27. (Notably, the Company presented the Commission with a detailed affordability analysis. The record reflects that while the Staff and Legal Action Chicago responded to the Company's analysis and methodology, the Village offered neither criticism nor a contrary analysis.)

¶ 30 Moreover, the Commission was not required to accept the 136 bills as evidence of widespread unaffordability. In addressing customer bill impacts, the Commission considered the Company's argument that the 136 bills were not representative of the roughly 22,000 bills issued to Village residents each month. The Company noted the bills included charges imposed by the Village itself and could very well reflect customer-specific conditions, such as landscape irrigation, swimming pools, and leaks. The Company further noted that 17 accounts were past due or delinquent, 26 reflected residential usage exceeding 10,000 gallons per month, and 11 exceeded 20,000 gallons, compared with the 3,800-gallon average. At most, the bills showed that certain customers incurred high charges, not that the Company's rates were broadly unaffordable.

¶ 31 Taken together, the public comments and customer bills did not establish that the approved rates violated the Act (220 ILCS 5/10-201(e)(iv)(C) (West 2024)) or that the Commission reached its decision through an unlawful and prejudicial process (*id.* § 10-201(e)(iv)(D)). We therefore find no basis for reversal under either ground.

¶ 32                    2. *Section II of the Village's argument*

¶ 33 In section II of its argument, the Village invokes section 10-201(e)(iv)(A) as a basis for reversal. Section 10-201(e)(iv)(A) permits reversal when the Commission's findings are not supported by substantial evidence based on the entire evidentiary record before the Commission. *Id.* § 10-201(e)(iv)(A) (West 2024). An appellant seeking relief on this basis faces a "heavy burden." *People ex rel. Raoul v. Illinois Commerce Comm'n*, 2021 IL App (1st) 200366, ¶ 54. Substantial evidence is not conclusive evidence; it is simply "evidence that a reasonable mind might accept as adequate to support a conclusion." (Internal quotation marks omitted.) *North Shore Gas Co. v. Illinois Commerce Comm'n*, 2024 IL App (2d) 230229, ¶ 58. It need only be more than a scintilla, not a preponderance, and may support multiple possible findings. *Id.* "The

Commission's findings are deemed to be *prima facie* true and correct, and the party challenging them has the burden of showing them to be against the manifest weight of the evidence." *Id.*

¶ 34     The Village argues the Commission "placed disproportionate weight on the Company's financial projections and claims of rate fairness and affordability" when it should have considered public comments and evidence of "obviously high bills." This argument misses the mark. Rather than show the Commission's findings lacked substantial support in the entire record, as required for reversal under section 10-201(e)(iv)(A), the Village selectively highlights a part of the record that favors its position and argues the Commission gave certain evidence "disproportionate weight." Because reviewing courts do not reweigh the record, an appellant's identification of evidence supporting an alternative conclusion is insufficient to overturn the Commission's decision. *City of Elgin v. Illinois Commerce Comm'n*, 2016 IL App (2d) 150047, ¶ 52; *Adams County Property Owners & Tenant Farmers v. Illinois Commerce Comm'n*, 2015 IL App (4th) 130907, ¶ 67 ("[I]t is not the function of this court on review to reweigh the evidence."). Notably, the Commission entered a 250-page order containing findings on numerous contested issues. The materials the Village now seeks to elevate above the rest of the record were submitted and argued in connection with "bill impacts," a subsection of the Commission's rate-design analysis. "Because of its complexity and need to apply informed judgment, rate design is uniquely a matter for the Commission's discretion." *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 421, 445 (1993). Accordingly, we may not disturb the Commission's rate-design determination merely because the Village would have assigned greater weight to the public comments and billing statements.

¶ 35     In short, the Village does not explain why the evidentiary record, considered as a whole, fails to provide substantial support for the decision's numerous findings. The Village, therefore,

11

cannot show the decision was against the manifest weight of the evidence. See *North Shore Gas Co.*, 2024 IL App (2d) 230229, ¶ 58.

¶ 36    We reach this conclusion without discounting the financial hardship described by the Village's residents. Whether the Act should afford customers additional protections or set priorities among its competing objectives is a policy judgment for the General Assembly. See *Illinois Landowners Alliance, NFP v. Illinois Commerce Comm'n*, 2017 IL 121302, ¶ 50 (recognizing the Act favors limited monopoly over competition and the wisdom of that policy rests with the legislature, not the courts); *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394 (1998) ("The responsibility for the justice or wisdom of legislation rests upon the legislature."). Our review is strictly confined to the statutory grounds for reversal and does not extend to deciding which of the Act's objectives should take precedence.

¶ 37                              III. CONCLUSION

¶ 38    The Village has not met its burden to establish reversible error under the Act. We therefore affirm the order of the Illinois Commerce Commission.

¶ 39    Affirmed.